UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
ENTRAL GROUP INTERNATIONAL,
LLC,

              Plaintiff,

-against-

YHLC VISION CORP. and JEFF CHEN,

              Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 05-CV-1912 (FB) (RLM)

*Appearances:*
*For the Plaintiff:*
ROBERT E. HANLON, ESQ.
Alston & Bird LLP
90 Park Avenue
New York, New York 10016

*For the Defendants:*
ANDREW YOUNGSON LIN, ESQ.
Law Office of Andrew Lin
39-07 Prince Street, Suite 5C
Flushing, New York 11354

**BLOCK, Senior District Judge:**

Plaintiff Entral Group International, LLC ("EGI") sues YHLC Vision Corp. ("YHLC") and Jeff Chen ("Chen") (collectively, "defendants") for their unauthorized use of EGI's registered karaoke works, seeking statutory damages pursuant to 17 U.S.C. § 504(c), and costs and attorney's fees pursuant to 17 U.S.C. § 505. A bench trial was held on December 3, 2007; the following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

### FINDINGS OF FACT

The Court adopts the parties' "Statement of Stipulated Facts" contained in the Joint Pretrial Order filed November 27, 2007. *See* Docket Entry # 89. Thus, the following findings of fact are based upon stipulated facts as well as testimony and evidence presented at trial.

1) Chen is YHLC's sole shareholder.

2) Prior to trial, Chen filed for Chapter 13 bankruptcy.[1]

3) YHLC is in the process of dissolution.

4) YHLC owned the Black Swan Club (the "Club"), a karaoke club in Flushing, New York.

5) The Club opened for business in January 2005.

6) The Club had twelve private rooms in which patrons could perform karaoke originating from Hong Kong, Taiwan, China, Thailand and the United States.

7) Nine of the rooms were rented at the rate of $60/hour; the remaining three rooms were larger and were rented for $120/hour; the fees included karaoke, food and beverages, including alcohol. The Club's revenue was in the order of $7,000 to $8,000 per week; however, it has ceased operations.

8) Initially, the Club displayed its karaoke through a system purchased from and installed by IUG Business Solutions ("IUG"); IUG also installed a security system for the Club. The cost of these systems was between $60,000 and $70,000.

9) While IUG's contract with the Club states that "all Copyrighted material are provided and installed by [the Club] at [its] own expense," Pl.'s Ex. 7., the IUG karaoke system was preinstalled with between 20,000 to 30,000 karaoke works.

10) The IUG karaoke equipment contained a notice informing the Club that a license for preinstalled Chinese-language karaoke was required.

---

[1]As a result, the Court is without jurisdiction to render judgment against Chen. *See* 11 U.S.C. § 362(a)(1) (providing automatic stay of action upon filing of bankruptcy petition).

11) Approximately one-quarter of the Club's karaoke catalog consisted of English-language songs; YHLC paid an annual licensing fee of $672 for these songs. *See* Defs.' Ex. A.

12) The parties stipulate that the Club did not have a license for the Chinese-language karaoke works preinstalled by IUG, *see* Docket Entry 89 at 5 ("YHLC used the IUG equipment and content without a license."); indeed, Li Shao Feng ("Li"), the operational manager of the Club, testified that when the Club opened, he did not know from whom the Club could purchase a license for these works. Chen testified similarly, stating that he did not know how to get a license at the time.

13) EGI has exclusive rights to publicly perform, display, synchronize, commercially use and enforce Chinese-language karaoke works created by Universal Music Limited, EMI Group Hong Kong Limited, Emperor Entertainment (Hong Kong) Limited, Go East Entertainment Company Limited, Cinepoly Record Company, and Warner Music Hong Kong Limited, all of which are Hong Kong-based music labels.

14) While EGI has rights to approximately 15,000 karaoke works, only twenty-seven are registered with the U.S. Copyright Office.

15) EGI's annual revenue is approximately $500,000; prior to trial, it spent nearly $250,000 litigating this action. In the Eastern District of New York, EGI initiated 17 other actions against karaoke establishments; all have been resolved except for this matter.[2]

---

[2]Plaintiff's counsel represented to the Court that EGI continued to litigate this case after the Club ceased operations and Chen filed for bankruptcy in order to obtain a judgment for deterrent effect; however, the Court finds this representation to be disingenuous because EGI has obtained $2.1 million judgments in *Entral Group International, LLC v. Sun Sports Bar Inc.*, 05-CV-4836, 2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007), and *Entral*

16) On March 29, 2005, Andy Wong ("Wong"), a private investigator acting on behalf of EGI, went to the Club to determine whether it was unlawfully using any of EGI's karaoke works. Wong's investigation determined that twelve of EGI's registered works were used by the Club without license.

17) Sometime in the first half of April of 2005, EGI sent a cease-and-desist letter demanding the Club stop using EGI's works without a license. A copy of the letter was not introduced at trial; therefore, the exact date of the letter is unknown.

18) In response, Chen had his friend Peter Yee ("Yee") meet with Nicholas Chai ("Chai"), EGI's President, to discuss purchasing a license from EGI. Chai offered to grant the Club a license for an annual fee of approximately $25,000; according to Chai, this reflected a 25% discount from EGI's standard fee.

19) Chen and Yee determined that the fee demanded by Chai was too high, particularly in light of the fact that EGI's license would not cover karaoke works from outside of Hong Kong; as a result, Yee went to China to purchase a karaoke system that would not violate EGI's copyrights.

20) On April 19, 2005, EGI filed the complaint. Plaintiff's counsel represented at trial that the lawsuit was filed several weeks after the cease-and-desist letter was sent; however, at most, two and a half weeks elapsed between the letter and the filing of the complaint.

---

*Group International, LLC v. Honey Cafe on 5th, Inc.*, 05-CV-2290, 2006 WL 3694584 (E.D.N.Y. Dec. 14, 2006). Further, EGI's own website contains four consent decrees obtained in other actions against karaoke clubs in the New York City area. *See* Entral Group International Inc. - Legal Cases & News, *http://entralgroup.com/legalCases.html* (last visited Dec. 4, 2007).

4

21) The karaoke system Yee purchased from China was installed at the Club in May of 2005.

22) Plaintiff does not contend that a license was needed for the Club to validly use the system from China; however, it was inferior in many respects to the IUG system and Chen and Li viewed the system from China as a stop-gap measure until they could find non-infringing karaoke works to use with the IUG system.

23) From May of 2005 to the beginning of 2006, the Club used the karaoke system purchased from China, not the IUG system. During this period, the Club paid monthly fees to IUG in order to maintain the Club's security system; the Club also purchased remote controls to use with IUG's karaoke system in anticipation of finding non-infringing karaoke works to use with the system.

24) In January or February of 2006, YHLC joined the North America Karaoke-work Trade Association ("NAKwTA"), which provided the Club with karaoke works to use with its IUG system.

25) Prior to receiving the NAKwTA works, Chen discussed with NAKwTA representatives whether using the NAKwTA material would result in copyright violations; Chen was told that NAKwTA's counsel was of the opinion that its works did not violate any copyrights.

## CONCLUSIONS OF LAW

Defendants do not dispute that they violated EGI's copyrights by offering EGI's works to the public without a license, see 17 U.S.C. § 106; therefore, the Court must determine the relief to be awarded.

## A. Statutory Damages

Plaintiff has elected to recover statutory damages of "not less than $750 or more than $30,000 as the court considers just" for each of the twelve registered works used by defendants without license. 17 U.S.C. § 504(c)(1). However, "where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court *in its discretion may* increase the award of statutory damages to a sum of not more than $150,000" per work. 17 U.S.C. § 504(c)(2) (emphasis added).[3] To establish willfulness, plaintiff must prove that "defendant had knowledge that its conduct constituted infringement or showed reckless disregard for the copyright holder's rights." *Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995). Willfulness is not difficult to prove because "knowledge may be actual or constructive." *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (citation and quotation marks omitted). Here, Chen, and by extension YHLC, acted willfully because he had, at a minimum, constructive knowledge that he needed to obtain a license for the preinstalled Chinese-language karaoke that was preinstalled on the IUG system; however, he failed to do so because he did not know how to obtain such a license.

"In making a statutory award, the court may consider the likelihood of profits and losses and may take into account the attitude and conduct of the parties." *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989). Within the range of

---

[3]The statutory minimum is reduced to $200 "where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," 17 U.S.C. § 504(2); this section is inapplicable because defendants do not dispute their infringement.

6

statutory damages, the court has broad discretion; indeed, appellate review of such an award is even more deferential than the abuse of discretion standard. *See Douglas v. Cunningham*, 294 U.S. 207, 210 (1935) ("[T]he employment of the statutory yardstick, within set limits, is committed solely to the court which hears the case, and this fact takes the matter out of the ordinary rule with respect to abuse of discretion.").

The Court finds that an award of $750 for each of the twelve registered works used by the Club without license to be just because it is highly unlikely that defendants profited from violating EGI's copyrights in light of the Club having ceased operations, Chen having filed for bankruptcy and YHLC being in the process of dissolution. Further, the evidence shows that the infringement, while done with knowledge, was not malicious because Chen simply did not know how to obtain a license for Chinese-language karaoke until he received EGI's cease-and-desist letter; upon learning of EGI's rights, Chen acted in good faith to negotiate for a license with EGI, and, once it became apparent that EGI's desired fee was unreasonably high, Chen sought non-infringing alternatives. This award is also justified by the attitude and conduct of plaintiff which unreasonably demanded a licensing fee that amounted to over 35 times the fee YHLC paid to use English-language karaoke which accounted for one-fourth of its catalog, and filed suit shortly after sending the cease-and-desist letter.

## B. Costs and Attorney's Fees

In a copyright infringement action, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable

attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). In light of the factors discussed in awarding EGI the statutory minimum in damages, the Court declines to award costs or fees. *See, e.g., New Line Cinema v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 305 (S.D.N.Y. 2001) (declining to award fees, costs or expenses on a "record of innocent infringement, good faith litigation and [defendant's attempt to avoid infringement]").

## CONCLUSION

For reasons stated above, judgment of $9,000 shall be entered against YHLC, consisting of $750 for each of EGI's twelve registered works used by defendants without license; EGI's request for costs and fees is denied.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 7, 2007